UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF JULIO MIGUEL ORLANDINI-AGREDA AND COMPAÑÍA MINERA ORLANDINI LTDA. FOR AN ORDER DIRECTING DISCOVERY FROM GIBSON, DUNN & CRUTCHER LLP PURSUANT TO 28 U.S.C. § 1782 | Misc. Action No. _____ |

**PETITION FOR DISCOVERY IN AID OF A FOREIGN PROCEEDING
PURSUANT TO 28 U.S.C. § 1782**

1.　Pursuant to 28 U.S.C. § 1782 ("Section 1782") and based on the concurrently filed Memorandum of Law and Declaration of David M. Orta ("Orta Decl."), Petitioners Julio Miguel Orlandini-Agreda and Compañía Minera Orlandini Ltda. ("CMO") submit this Petition for Discovery, seeking an order permitting Petitioners to issue a subpoena in the form attached as Exhibit A to Gibson, Dunn & Crutcher LLP ("Gibson Dunn") for the production of documents and testimony that would assist Petitioners in a foreign legal proceeding.

2.　Section 1782 provides for discovery in the United States to assist tribunals and parties to proceedings before foreign or international tribunals.  In relevant part, Section 1782 states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

3. The requirements of Section 1782 are satisfied in this case. As explained in the accompanying Memorandum of Law, (1) Gibson Dunn "resides or is found" in this District; (2) the discovery sought is "for use in" a proceeding before a foreign and international arbitral tribunal; and (3) the Petitioners are "interested persons" in that proceeding. Mem. of Law at pp. 6-7. The discretionary factors that a Court may consider when evaluating a Section 1782 petition also weigh in favor of granting the Petition. *Id.* at pp. 9-12; *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

4. Petitioners require the requested discovery in connection with a soon to be filed investment treaty arbitration against the Plurinational State of Bolivia ("Bolivia") under the United Nations Commission on International Trade Law ("UNCITRAL") Arbitration Rules. Orta Decl. ¶¶ 17, 18, 23. The arbitration arises out of Bolivia's violations of the U.S.-Bolivia Bilateral Investment Treaty ("U.S.-Bolivia BIT") and customary international law, including illegal expropriation of CMO's mining concessions and transfer of those concessions to Glencore International AG (together with its subsidiaries, "Glencore")—the successor of Gibson Dunn's former client who owned Compañía Minera del Sur S.A. ("COMSUR"). Orta Decl. ¶¶ 14, 18, 23.

5. As background, from 1993 until 2005, the Bolivian state-owned mining company Corporación Minera de Bolivia ("COMIBOL") and COMSUR, through a joint venture, operated mining concessions in the Bolívar area in Bolivia, called the "Bolívar mine concessions." Orta Decl. ¶ 7. COMSUR, per its role in the joint venture, was the operator of these concessions, many of which directly abutted or surrounded certain of CMO's concessions. Orta Decl. ¶ 7.

6. In 1997, the Bolivian government granted a new concession called "Seguridad I" to COMIBOL, and in 2001, this concession was incorporated as part of the Bolivar mine concessions under operation by the joint venture between COMIBOL and COMSUR. Orta Decl.

2

¶ 8.  The Seguridad I concession overlaid two pre-existing mining concessions named Veneros San Juan and Pretoria that belonged to CMO.  Orta Decl. ¶ 8.  Both Bolivian law and the terms of Seguridad I specify that pre-existing mining concessions are not affected by later-granted concessions.  Thus, CMO's pre-existing mining rights in Veneros San Juan and Pretoria remained intact.  Orta Decl. ¶ 9.

7.  Because COMIBOL's and COMSUR's Bolivar Mine concessions lay to the north and south of CMO's Veneros San Juan and Pretoria concessions, in 1999, COMIBOL and COMSUR tried to negotiate with CMO an easement and the right to build galleries deep within CMO's concessions for the transport of minerals.  However, the negotiations were not successful.  Orta Decl. ¶ 10.

8.  CMO later learned that COMIBOL and COMSUR were conducting illegal mining activity in the sub-surface areas of CMO's Veneros San Juan and Pretoria concessions without CMO's authorization.  CMO complained to COMIBOL's and COMSUR's executives about this illegal activity, demanded that it cease, and attempted to inspect its own concessions, but COMIBOL and COMSUR blocked CMO's access to its concessions.  Orta Decl. ¶ 11.

9.  In late 2004 or early 2005, Gibson Dunn's former clients sold COMSUR to Glencore for about $220 million.  Orta Decl. ¶¶ 5, 12.  In that sale, Gibson Dunn represented the sellers of COMSUR.  Orta Decl. ¶ 13.  Prior to the sale transaction, COMSUR was owned 99.89% by Iris Mines & Metals S.A., which was in turn owned by Minera S.A.  Orta Decl. ¶ 12.  Former Bolivian President Gonzalo Sánchez de Lozada owned and controlled both holding companies.  Orta Decl. ¶ 14.  The other 0.11% of COMSUR was owned by Kempsey S.A. and Shattuck Trading S.A.  Orta Decl. ¶ 12.  Glencore purchased Iris Mines & Metals S.A. from Minera S.A., as well as

Kempsey S.A. and Shattuck Trading S.A., and thus became the sole owner of COMSUR itself sometime between 2004 and 2006.  Orta Decl. ¶ 14.

10.     Through a series of illegal measures following the sale of COMSUR to Glencore, Bolivia dispossessed CMO of its mining concessions and other property in Bolivia.  Orta Decl. ¶ 15.  This destroyed the value of CMO's investments in Bolivia, including its mining concessions and rights to minerals that COMSUR had illegally mined as well as CMO's mining and concession rights going forward.  *Id.*

11.     Petitioners are preparing to initiate an arbitration against Bolivia for its illegal actions under the bilateral investment treaty between the United States and Bolivia and the UNCITRAL Arbitration Rules.  Orta Decl. ¶¶ 17, 18.  In the arbitration, Petitioners will seek significant damages from Bolivia for various governmental actions through which Bolivia has violated its obligations to Mr. Orlandini and CMO, including expropriation of CMO's concessions and other violations of the U.S.-Bolivia BIT and customary international law.  Orta Decl. ¶ 18.

12.     By their Petition, Petitioners seek discovery of evidence in Gibson Dunn's possession of Bolivia's wrongful acts and the amounts of minerals extracted from CMO's concessions by COMSUR in the period of time leading to COMSUR's sale, as well as disclosure of these wrongful acts during the sale by COMSUR to Glencore.  Orta Decl. ¶ 23.  Gibson Dunn represented the sellers of COMSUR, and, in that role, assisted them with due diligence and other aspects of the sale.  Gibson Dunn is therefore likely to possess documents and information relevant to helping prove Bolivia's liability and the resulting damages in the arbitration, including due-diligence materials that show its client COMSUR's mining and movement of minerals in CMO's concessions under the unlawful guise of COMIBOL's Seguridad I concession.  Orta Decl. ¶¶ 13, 23.

13. Accordingly, for the reasons set forth above, and in the accompanying Memorandum of Law and Declaration of David M. Orta, Petitioners respectfully move the Court to issue an order granting the Petition and authorizing the issuance of a subpoena in the form attached hereto as Exhibit A.

DATED: New York, New York
September 25, 2017

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Kevin Reed*

Kevin Reed (KR5368)
kevinreed@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000

*Attorney for Petitioners*